Blanca Estella FLORES, and the Attorney General of Texas, The Texas Title IV–D Agency, Appellants,

v.

Rafael Ernesto MELO–PALACIOS, Appellee.

No. 13–94–149–CV.

Court of Appeals of Texas, Corpus Christi.

April 4, 1996.

Rehearing Overruled May 16, 1996.

Dan Morales, Attorney General, Austin, Jorge Vega, First Asst. Attorney General, Austin, Karen S. Guerra, Guerra & Guerra, McAllen, Rhonda Amkraut Pressley, Assistant Attorney General, Child Support Enforcement, Austin, for Appellants.

Jose E. Garcia, Scott Breitenwischer, Garcia & Ramirez, McAllen, Neil E. Norquest, Norquest & Brisack, McAllen, Chris A. Brisack, Norquest & Brisack, McAllen, for Appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

YAÑEZ, Justice.

Appellant, Blanca Flores, filed an action against Rafael Melo–Palacios to register, enforce, and modify a Mexican decree for child support. The Attorney General, also an appellant and as the Texas agency providing child support services, filed a petition in intervention. Melo–Palacios filed a special appearance as to both appellants' pleadings challenging the trial court's personal jurisdiction. The trial court denied the Attorney General's intervention. Additionally, the trial court dismissed the action with prejudice, finding it had no personal jurisdiction over Melo–Palacios and no subject matter jurisdiction over the suit. The Attorney General appeals from the court's order denying his intervention and both appellants appeal from

the dismissal of the action with prejudice. We reverse and remand.

Flores and Melo–Palacios were divorced on October 19, 1981, in Monterrey, Mexico. The divorce decree provided that Flores would have custody of Ricardo, the child who is the subject of this suit, and ordered Melo–Palacios to pay 15% of his earnings for the support of Ricardo. All parties are citizens of Mexico. Flores and Ricardo have lived in Hidalgo County since 1986. Melo–Palacios obtained a United States L–1 business visa in December 1989.

On July 19, 1991, in Dallas, Texas, Melo–Palacios received service of Flores' original pleading which was an action to modify and enforce the Mexican divorce decree. Melo–Palacios filed a special appearance and a response to the motion subject to the special appearance. The court denied the special appearance. Flores subsequently filed a first amended suit affecting the parent-child relationship in which she sought a Texas order establishing the parent-child relationship between Melo–Palacios and Ricardo and requiring paternity tests. Flores also requested that appropriate orders be made for support of the child. Melo–Palacios filed an answer and moved for dismissal because he had never contested the issue of paternity. The trial court denied Melo–Palacios' motion to dismiss the paternity action.

On February 9, 1993, Flores filed a motion seeking to register the Mexican divorce decree in Texas. On April 6, 1993, the parties purportedly agreed to the entry and registration of the foreign decree. Although an entry on the docket sheets shows an agreement as to the registration of the foreign decree, the record shows no court order confirming the registration. Flores filed a second amended original petition on April 23, 1993, alleging that the Mexican divorce decree had already been registered by agreement of the parties, and requested enforcement and an upward modification of the foreign order. Flores did not reassert the paternity action in her second amended petition.

On February 11, 1993, the Attorney General filed a petition in intervention in a suit affecting the parent-child relationship. The Attorney General sought to establish a Texas child support order. Melo–Palacios filed a special appearance in response. He also filed a motion for reconsideration of his special appearance to Flores' action. The court disallowed the Attorney General's intervention. Moreover, ruling that it lacked jurisdiction over Melo–Palacios and the lawsuit, the court dismissed the suit with prejudice. The appeal arises from these two rulings.

■ By point one, Flores contends that the trial court erred in dismissing the action for want of jurisdiction because the court obtained personal jurisdiction over Melo–Palacios once he received service of process while physically present in Texas. The Attorney General makes the same challenge in point 2B. Similarly, by her second point, Flores asserts that the trial court had personal jurisdiction over Melo–Palacios because he was a Texas resident at the time he was served with process. A trial court's refusal to exercise its jurisdiction over a suit affecting the parent-child relationship will not be disturbed on appeal absent a clear abuse of discretion. *Creavin v. Moloney,* 773 S.W.2d 698, 702 (Tex.App.—Corpus Christi 1989, writ denied).

■ After a review of the facts, we find that Melo–Palacios was a resident of Texas when Flores served him with process seeking enforcement and modification of his child support obligations. In order to establish residency, a person must be living and physically present in a particular locality. *San Patricio County v. Nueces County Hosp.,* 721 S.W.2d 375, 377 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). Residence simply requires bodily presence as an inhabitant in a given place. *Holt v. Drake,* 505 S.W.2d 650, 652 (Tex.Civ.App.—Eastland 1973, no writ).

Melo–Palacios rented a Dallas apartment for at least one year. His Texas driver's license shows the Dallas apartment as his address. He and his current wife lived in Dallas with their daughter while she attended a school in Dallas for one year. They attended a Dallas church and his wife applied for membership with the church. These facts demonstrate that Melo–Palacios was a Texas resident and was amenable to service

of process when Flores sought enforcement and modification of child support. The trial court should not have dismissed the action for lack of personal jurisdiction over Melo–Palacios.

■ Moreover, even if Melo–Palacios was not a Texas resident at the time he received service of process on Flores' motion to modify, he still would have come within the purview of the Texas courts' in personam jurisdiction. Texas Family Code § 11.051, which governs suits affecting the parent-child relationship, provides:

> The court may also exercise personal jurisdiction over a person on whom service of citation is required ..., although the person is not a resident or domiciliary of this state, if:

> (4) there is any basis consistent with the constitutions of this state and the United States for the exercise of the personal jurisdiction.

TEX.FAM.CODE ANN. § 11.051 (Vernon 1986) (currently codified at TEX.FAM.CODE ANN. § 102.011 (Vernon Supp.1996)).

■ A trial court has authority to exercise in personam jurisdiction over a nonresident where the court's jurisdiction grew out of the personal service of citation upon the nonresident within the state. *Brown v. Brown*, 520 S.W.2d 571, 574–75 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ dism'd). A nonresident, merely by reason of his nonresidence, is not exempt from a court's jurisdiction if he voluntarily comes to the state and thus is within the territorial limits of such jurisdiction and can be duly served with process. *Bowman v. Flint*, 37 Tex.Civ.App. 28, 82 S.W. 1049, 1050 (1904, no writ); *see also Banco Minero v. Ross & Masterson*, 138 S.W. 224, 237 (Tex.Civ.App.—San Antonio 1911), *aff'd*, 106 Tex. 522, 172 S.W. 711 (1915) (money is deemed in law to accompany the person of the owner wherever he goes and his right to it is governed and determined by the law of the country wherever he may be when a suit to affect his right is instituted, and the action as to him must be regarded as strictly in personam, and if his person is not brought within the jurisdiction of the court by actual service of process, any judgment rendered against him in the suit will be null and void).

This issue was extensively addressed by the Supreme Court in *Burnham v. Superior Court of Cal., County of Marin*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990). In a plurality opinion, Justice Scalia stated that it is a firmly established principle of personal jurisdiction that the courts of a state have jurisdiction over nonresidents who are physically present in the state. *Id.* at 610, 110 S.Ct. at 2110; *see also id.* at 628, 110 S.Ct. at 2119 (White, J., concurring) (the rule allowing jurisdiction to be obtained over a nonresident by personal service in the forum state has been and is widely accepted throughout this country). Each state has the power to hale before its courts any individual who could be found within its borders, and that once having acquired jurisdiction over such a person by properly serving him with process, the state could retain jurisdiction to enter judgment against him, no matter how fleeting his visit. *Id.* at 610–11, 110 S.Ct. at 2110. Personal service upon a physically present defendant suffices to confer jurisdiction, regardless of whether the defendant was only briefly in the state or whether the cause of action was related to his activities there. *Id.* at 612, 110 S.Ct. at 2111. The in-state service rule meets the requirements of the Due Process Clause because it comports with "traditional notions of fair play and substantial justice." *Id.* at 622, 110 S.Ct. at 2116. The Supreme Court therefore concluded that the California courts had personal jurisdiction over a New Jersey resident who was served with process while temporarily in California for activities unrelated to the suit. *Id.* at 628, 110 S.Ct. at 2119.

Justice Brennan, joined by three other justices, concurred in the judgment. Justice Brennan agrees that the Due Process Clause generally permits a state court to exercise jurisdiction over a defendant if he is served with process while voluntarily present in the forum state. *Id.* at 628–29, 110 S.Ct. at 2119–20. However, Justice Brennan disagrees with Justice Scalia's analysis that the jurisdictional rule automatically comports with due process simply by virtue of its long historical and traditional practice. Justice

Brennan's concurrence states that, although history is an important factor in determining whether a jurisdictional rule satisfies due process requirements, it is not the only factor. *Id.* at 629, 110 S.Ct. at 2120. Thus, Justice Brennan undertook an independent inquiry into the fairness of the prevailing in-state service rule. *Id.* The rule must comport with contemporary notions of due process. *Id.* at 632, 110 S.Ct. at 2122. A defendant who visits another state knowingly assumes some risk that the state will exercise its power over his person while there. *Id.* at 637, 110 S.Ct. at 2124. By visiting the forum state, a transient defendant actually avails himself of significant benefits provided by the state. *Id.* Justice Brennan proceeded to list the benefits defendant derived from the state of California while he visited the state on business and to visit his children. His health and safety are guaranteed by the state's police, fire, and emergency medical services; he is free to travel on the state's roads; and he likely enjoys the fruits of the state's economy. "Without transient jurisdiction, an asymmetry would arise [wherein a] transient would have the full benefit of the power of the forum State's courts as a plaintiff while retaining immunity from their authority as a defendant." *Id.* at 638, 110 S.Ct. at 2125. Justice Brennan concluded that for these reasons, the exercise of personal jurisdiction over a defendant based on his voluntary presence in the forum will satisfy the requirements of due process. *Id.* at 639, 110 S.Ct. at 2125.

It is clear from the cases cited above that the trial court had personal jurisdiction over Melo–Palacios based on his voluntary presence in Texas where he received service of process. Melo–Palacios testified that he stayed in an apartment in Dallas whenever he traveled to the United States for business. His company rented an apartment in Plano for him for four months. In August 1990, he rented his own apartment in Dallas. His second wife and daughter also stayed in the apartment. His daughter attended school in Dallas for one year. Additionally, he received mail at the Dallas address, had a Texas driver's license, had two bank accounts in Texas, and filed tax returns in the U.S. Melo–Palacios unquestionably availed himself

and derived significant benefits from the state of Texas. Because Flores served Melo–Palacios with a citation while he was physically present in Texas, the trial court may properly exercise personal jurisdiction over him.

In summary, we hold that Melo–Palacios was a Texas resident at the time Flores sought enforcement and modification of child support. Therefore, the trial court had personal jurisdiction over him. Even if he was a nonresident, his receipt of service of process while he was physically present in Texas made him amenable to service; therefore, the trial court had authority to exercise personal jurisdiction over him. We sustain Flores' points one and two and the Attorney General's point 2B.

Having disposed of the personal jurisdiction issue, we need not reach Flores' point three concerning the Texas courts' jurisdiction over Melo–Palacios.

 Flores, by points four and five, and the Attorney General, by point 2C, assert that the trial court erred in dismissing their suit to register, enforce, or modify a Mexican child support order, or to establish a Texas order for child support in a suit affecting the parent-child relationship for lack of subject matter jurisdiction. We agree. The imposition of child support obligations is included within a suit affecting the parent-child relationship. TEX.FAM.CODE ANN. § 11.01(5) (Vernon 1986) (currently codified at TEX.FAM. CODE ANN. § 101.032 (Vernon Supp.1996)). Texas asserted its particularized interest in adjudicating child support by enacting a special jurisdictional statute, Texas Family Code § 11.051. *In re S.A.V. & K.E.V.,* 837 S.W.2d 80, 87 (Tex.1992). Section 11.051 provides that

> [i]n a suit affecting the parent-child relationship, the court may exercise status or subject matter jurisdiction over the suit as provided by Subchapter B [Uniform Child Custody Jurisdiction Act] of this chapter. [footnote omitted]. The court may also exercise personal jurisdiction over a person on whom service of citation is required or over the person's personal representative, although the person is not a resident

or domiciliary of this state, if [one of several conditions is satisfied].

TEX.FAM.CODE ANN. § 11.051 (Vernon 1986) (currently codified at TEX.FAM.CODE ANN. § 102.011 (Vernon Supp.1996)). However, the status or subject matter jurisdiction permitted by § 11.051 for suits affecting the parent-child relationship is merely an alternative means of obtaining jurisdiction when the court is unable to obtain personal jurisdiction over the nonresident party. *Creavin*, 773 S.W.2d at 703. There is simply no requirement that there be both status and personal jurisdiction before a court may entertain a suit for child support. *Little v. McAninch*, 896 S.W.2d 199, 202 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *Creavin*, 773 S.W.2d at 703; *see also In re S.A.V. & K.E.V.*, 798 S.W.2d 293, 299 (Tex. App.—Amarillo 1990), *rev'd on other grounds*, 837 S.W.2d 80 (Tex.1992) (Texas order modifying child support provisions of Minnesota decree was valid where trial court had personal jurisdiction over defendant obligor). A claim for child support is closely analogous to a claim for debt in that it seeks a personal judgment establishing a direct obligation to pay money. *Perry v. Ponder*, 604 S.W.2d 306, 313 (Tex.Civ.App.—Dallas 1980, no writ). Accordingly, because the courts of the state in which the defendant resides are in a better position to determine the defendant's ability to pay, personal jurisdiction is necessary to the validity of such an order. *Id.* The jurisdictional principles used in child support determinations differ from the special jurisdictional principles used in child custody determinations which focus primarily on the "status" of the child. *Creavin*, 773 S.W.2d at 703. It is well-settled that a court may only render a judgment for child support against a person if the court has jurisdiction over that person. *Little*, 896 S.W.2d at 202; *Creavin*, 773 S.W.2d at 704; *see also Kulko v. Superior Court of Cal.*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).

█ We have already concluded that the trial court had personal jurisdiction over Melo–Palacios. Therefore, the trial court need not also obtain subject matter jurisdiction before entertaining a suit for child support. Hence, the trial court erred when it dismissed appellants' cause of action for child support. We sustain Flores' points four and five and the Attorney General's point 2C.

█ By point one, the Attorney General contends the trial court abused its discretion by striking the Attorney General's plea in intervention when no motion to strike had been filed and when the Attorney General could have brought the action in its own name. Rule 60 provides that "[a]ny party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R.CIV.P. 60. An intervenor is not required to secure the court's permission to intervene; the party who opposed the intervention has the burden to challenge it by a motion to strike. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990). Without a motion to strike, a trial court abuses its discretion in striking a plea in intervention. *Id.*

█ Here, the Attorney General filed a plea in intervention in order to provide child support services pursuant to Chapter 76 of the Texas Human Resources Code. *See* TEX. HUM.RES.CODE ANN. §§ 76.001–.008 (Vernon 1990) (current version at TEX.FAM.CODE ANN. § 231.001 *et seq.* (Vernon Supp.1996)). Without a motion to strike, the trial court struck the Attorney General's plea in intervention. Because the trial court abused its discretion in striking the plea in intervention, we sustain the Attorney General's point of error one.

Having addressed the points which are dispositive of the appeal, we need not reach the Attorney General's remaining point of error which asserts that a dismissal for lack of either personal or subject matter jurisdiction must be a dismissal without prejudice and not with prejudice. We reverse the trial court's order denying the Attorney General's intervention, reverse the judgment of the trial court dismissing the action for lack of personal and subject matter jurisdiction, and remand the cause to the trial court.