NO. 07-04-0421-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



NOVEMBER 1, 2004


______________________________



IN RE: EQUITABLE LIFE & CASUALTY INSURANCE COMPANY, 



 Relator

_________________________________



ORIGINAL PROCEEDING 


_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

 Pending before the court is a Motion to Dismiss Petition for Writ of Mandamus filed
by Equitable Life & Casualty Insurance Company (Equitable), petitioner in this mandamus
proceeding. According to Equitable, the parties have settled all claims, crossclaims and
counterclaims. Consequently, there is no further need for the mandamus proceeding. 

 Accordingly, we grant the motion and dismiss Equitable's petition for mandamus.



 Brian Quinn

 Justice



yce Parker’s sister. Helen’s husband was not related to Loyce’s\
husband despite the same surname. \
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}







NO. 07-07-0101-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

DECEMBER 31, 2008

______________________________


IN THE MATTER OF THE GUARDIANSHIP OF LOYCE
JUANITA PARKER, AN INCAPACITATED PERSON

_________________________________

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 24,438; HON. DAN MIKE BIRD, PRESIDING

_______________________________

Before CAMPBELL, HANCOCK and PIRTLE, JJ.
OPINION 
          Loyce Juanita Parker appeals the trial court’s appointment of her daughter Linda
Jones as the permanent guardian of her person and estate. On appeal, Parker challenges
the trial court’s exercise of personal jurisdiction, its finding that she was an incapacitated
person, its appointment of a guardian with full rather than limited authority, its appointment
of Jones as her guardian, and its creation of a guardianship of her estate. We will affirm
the judgment. 
 
Background
          Parker was born March 2, 1919, and with little interruption lived in Oklahoma until
2006. She and her husband of 68 years, Alvin Edward Parker, Sr., made their home on
a farm near Waurika, Oklahoma. They were parents of five children. Four remained alive
at the time of the guardianship hearing: Linda Jones, Polly Ward, Debra Boring, and Alvin
Edward Parker, Jr. (Edward Parker). Jones and Boring live in Vernon, Texas, while
Edward Parker and Ward live in Oklahoma. Other relatives live in Oklahoma and Vernon. 
          Parker’s husband died unexpectedly in May 2006. By then, Parker no longer
cooked and the family farmhouse was, according to Ward, “not livable.” After her
husband’s funeral, Parker briefly stayed with Ward and with Parker’s grandson in
Oklahoma. On June 11, Parker went to Jones’s home in Vernon. On June 23, Parker
moved to the Alterra Sterling House, an assisted living center in Vernon. Edward Parker
is trustee of a trust created by Parker and her husband providing for management of their
assets. Jones testified that, as trustee, Edward Parker approved payment for his mother’s
care at Alterra. Boring spent two days decorating Parker’s room and helped her mother
send e-mails notifying the family of Parker’s new address. One of the messages reported
Parker was forgetful and “a little lonely.” 
          Later that summer Parker was hospitalized for about ten days in Oklahoma City. 
While hospitalized, she was evaluated by a psychiatrist identified at trial only as “Dr. Dash.”
Dr. Dash did not appear live or by deposition at trial, but according to the testimony of
Jones and Ward, it was the opinion of Dr. Dash that Parker had dementia or “mild
dementia,” could not cook or drive, needed assistance with medication, required 24-hour
care, and needed a guardian. Ward suggested Jones pursue a guardianship of their
mother. 
          During November, Wichita Falls psychiatrist Brian Wieck, M.D., examined Parker.
In a letter addressed to the Wilbarger County judge, Dr. Wieck opined that Parker was
“incapacitated.” The letter did not define the term. Dr. Wieck further opined that Parker
suffered dementia and had “significant cognitive deficits including poor memory,
disorientation, and confusion.” He noted Parker experienced time disorientation, was not
familiar with her medications, could not describe her financial situation, and was unable to
recall recent meals. In his estimation, Parker’s dementia was progressive. 
          Jones made application for appointment as permanent guardian of the person and
estate of Parker in a pleading filed December 1, 2006. Attached was the letter of Dr.
Wieck. The county court appointed an attorney ad litem for Parker and he answered on
her behalf by general denial. 
          On December 16, without prior notice to Jones, Edward Parker along with Jones’s
nephew and a friend of the family removed Parker from Alterra and placed her at Heartland
Plaza, an assisted living facility in Duncan, Oklahoma. Edward Parker filed a contest of
Jones’s guardianship application and the case was transferred to district court. Edward
Parker also initiated Oklahoma proceedings for a guardianship of Parker. Following a
January 8, 2007, hearing the Texas court appointed Jones temporary guardian of her
mother. At the hearing, Ward testified of the need for a temporary guardian. The court
ordered Edward Parker to immediately return his mother to Texas but his counsel notified
the court that Parker would not voluntarily return to Texas. 
          Although Parker’s attorney ad litem remained in place, attorney Matthew Malone
appeared on her behalf by notice filed February 2. Malone subsequently filed a motion for
continuance, a motion to dismiss Jones’s application, and an amended answer, and
prosecuted a contest of the guardianship and appointment of Jones. On February 8,
Edward Parker non-suited his contest of the proceeding. In a pleading filed on March 6,
the day of trial, Ward and Boring contested the application for a permanent guardianship
and alternatively sought appointment as guardian of their mother’s person and estate. 
          On March 6, the court heard the pending applications and contests. Parker did not
appear for the hearing but the court found her personal appearance unnecessary.
Following the close of evidence, the court rendered judgment appointing Jones guardian
of the person and estate of Parker, with full guardianship authority. By notice filed by
Malone, Parker appealed.
Discussion 
          In her first issue, Parker contends she was not subject to the personal jurisdiction
of the trial court. 
          Parker initially appeared by general denial and did not make a special appearance
challenging the trial court’s exercise of personal jurisdiction.


 Following Malone’s entry on
her behalf she filed a motion for continuance and motion in limine to dismiss Jones’s
application. Neither were made subject to a challenge of the trial court’s exercise of
personal jurisdiction. On February 28, over fifty days after Jones’s appointment as
Parker’s temporary guardian, Parker filed an unsworn amended answer which inter alia
alleged the trial court lacked personal jurisdiction because she was not a Texas resident. 
          The existence or not of personal jurisdiction is a question of law. BMC Software
Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). Rule 120a allows a party to
challenge a court’s exercise of personal jurisdiction by making a special appearance
through a sworn motion filed prior to a motion to transfer venue or any other plea, pleading,
or motion. Tex. R. Civ. P. 120a(1). The rule is a limited exception to the general rule that
a party subjects itself to a Texas court’s jurisdiction by making an appearance for any
purpose. Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 201 (Tex. 1985). A party
may waive, however, any objection it might otherwise have to a court's exercise of personal
jurisdiction over it. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14, 105 S.Ct.
2174, 2182 n.14, 85 L.Ed.2d 528 (1985); Shapolsky v. Brewton, 56 S.W.3d 120, 140
(Tex.App.–Houston [14th Dist.] 2001, pet. denied), disapproved on other grounds by
Michiana Easy Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 788-89 (Tex. 2005). Thus,
a party waives the right to contest personal jurisdiction over it when it makes a general
appearance before the court. Any answer or other appearance before judgment is a
general appearance unless the party made a “special appearance” for the purpose of
challenging the trial court’s jurisdiction. Tex. R. Civ. P. 120a; Shapolsky, 56 S.W.3d at
140. Parker made a general appearance through her original answer, and through her
later motion to dismiss Jones’s application. 
          Additionally, it is undisputed that Parker was served with citation in Wilbarger
County. The gist of Parker’s jurisdictional complaint is answered by the case law holding
that “[a]n assertion of personal jurisdiction based on physical presence alone constitutes
due process.” Stallworth v. Stallworth, 201 S.W.3d 338, 344 (Tex.App.–Dallas 2006, no
pet.) (citing Burnham v. Super. Court, 495 U.S. 604, 619, 110 S.Ct. 2105, 2115, 109
L.Ed.2d 631 (1990) (plurality op.) (“jurisdiction based on physical presence alone
constitutes due process because it is one of the continuing traditions of our legal system
that define the due process standard of ‘traditional notions of fair play and substantial
justice.’”)); In re Gonzalez, 993 S.W.2d 147, 151-54 (Tex.App.–San Antonio 1999, pet.
denied); Flores v. Melo-Paladins, 921 S.W.2d 399, 402-403 (Tex.App.–Corpus Christi
1996, writ denied). Therefore, even assuming arguendo that for the purpose of the trial
court’s exercise of personal jurisdiction Parker was not a Texas resident on December 1,
2006, personal jurisdiction in the trial court was not improper as Parker was served with
process in Wilbarger County. 
          Parker cites Redmon v. Leach, 130 S.W.2d 873 (Tex.Civ.App.–Dallas 1939, writ
dism’d judgm’t cor.) in support of her contention the Texas court had no jurisdiction to
appoint a guardian for her. But Redmon is inapposite. There, the prospective ward was
a domiciliary of Oklahoma and was not served with citation in the Texas proceeding to
establish guardianship. Id. at 874. 
          We find personal jurisdiction over Parker properly attached. We overrule Parker’s
first issue.
          In her second issue and allied sub-issues, Parker argues the trial court erred by
admitting Dr. Wieck’s letter as evidence because it was not authenticated and was
hearsay, and because Wieck was not a qualified expert and Parker did not consent to
disclosure of communication protected by the mental health professional-patient privilege
of Rule of Evidence 510(b). Tex. R. Evid. 510(b).
          We review challenges to the admission or exclusion of evidence, under an abuse
of discretion standard. Nat’l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527-28 (Tex.
2000). Conducting such a review, we examine the entire record to determine if the trial
court acted arbitrarily and unreasonably. Morrow v. H.E.B., Inc., 714 S.W.2d 297, 298
(Tex. 1986). A trial court does not abuse its discretion if it bases its decision on conflicting
evidence and some evidence supports its decision. In re Barber, 982 S.W.2d 364, 366
(Tex. 1998) (orig. proceeding). As fact finder, it was for the trial court to believe or
disbelieve the evidence and resolve questions of credibility. Aldine Indep. Sch. Dist. v.
Ogg, 122 S.W.3d 257, 267 (Tex.App.–Houston [1st Dist.] 2003, no pet.).
          With exceptions not applicable here, no guardianship of an incapacitated person
may be created unless a physician’s letter or certificate meeting the requirements of
Probate Code section 687(a) is presented to the trial court. Tex. Prob. Code Ann. § 687(a)
(Vernon 2003). Section 687(a), as it existed at the time Jones filed her application,
required a physician’s letter or certificate: 
(1) describe the nature and degree of incapacity, including the medical
history if reasonably available;

(2) provide a medical prognosis specifying the estimated severity of the incapacity;

(3) state how or in what manner the proposed ward's ability to make or
communicate responsible decisions concerning himself or herself is affected
by the person's physical or mental health;

(4) state whether any current medication affects the demeanor of the
proposed ward or the proposed ward's ability to participate fully in a court proceeding;

(5) describe the precise physical and mental conditions underlying a
diagnosis of senility, if applicable;

(6) include any other information required by the court.

Tex. Prob. Code Ann. § 687(a) (Vernon 2003). 
          The Wieck letter as an attachment to Jones’s application was filed on December 1,
2006. But at trial, over objection, the court took judicial notice of the letter and also
admitted it into evidence. Parker’s complaint is not that the Wieck letter fails to conform
with section 687(a); rather, she argues the letter was not admissible as evidence in a
contested guardianship hearing.


 
          Section 687(a) requires the applicant for a guardianship present a physician’s letter
or certificate to the court. By requiring presentation to the court, the legislature intended
the court to consider the contents of the letter or certificate. To say the statute forbids
judicial consideration because of evidentiary constraints would be illogical and render the
statute nugatory. We are not free to adopt a construction that renders a statute
meaningless or leads to absurd results. See Watts v. City of Houston, 126 S.W.3d 97, 100
(Tex. App.–Houston [1st Dist.] 2003, no pet.). While section 687 does not address the use
of a physician’s letter as evidence in a contested hearing, section 628 specifies “[t]he
record books or individual case files . . . shall be evidence in any court of this state.” Tex.
Prob. Code Ann. § 628 (Vernon 2003). Here, trial was to the court and even if not admitted
as trial evidence the court was compelled to consider the Wieck letter before granting or
denying Jones’s application for guardianship.


 Assuming, but without deciding, that the
court erred in admitting the Wieck letter as evidence in a contested hearing, the error was
harmless as the court was bound to consider the letter.


 We overrule Parker’s second
issue and allied sub-issues. 
          Through her third issue, Parker challenges the legal and factual sufficiency of the
evidence supporting the trial court’s finding of incapacity. Probate Code section 684 lists
the elements necessary for creating a guardianship. Tex. Prob. Code Ann. § 684(a), (b), 
(c) (Vernon 2003). An applicant must prove by clear and convincing evidence, inter alia,
that the proposed ward is “an incapacitated person.” Id. at (a)(1). An incapacitated person
includes “an adult individual who, because of a physical or mental condition, is substantially
unable to provide food, clothing, or shelter for himself or herself, to care for the individual's
own physical health, or to manage the individual’s own financial affairs . . . .” Tex. Prob.
Code Ann. § 601(14)(B) (Vernon 2003). Incapacity of a prospective adult ward must be
evidenced by “reoccurring acts or occurrences within the preceding six-month period and
not by isolated instances of negligence or bad judgment.” Tex. Prob. Code Ann. § 684 (c)
(Vernon 2003). 
          In reviewing the legal sufficiency of the evidence under a clear and convincing
standard, we look at all the evidence, in the light most favorable to the judgment, to
determine if the trier of fact could reasonably have formed a firm belief or conviction that
its finding was true. In re J.F.C., 96 S.W.3d 256, 265-66 (Tex. 2002). We presume that
the trier of fact resolved disputed facts in favor of its findings if a reasonable trier of fact
could do so. Id. We disregard any contrary evidence if a reasonable trier of fact could do
so, but we do not disregard undisputed facts. In re J.L., 163 S.W.3d 79, 85 (Tex. 2005). 
          In conducting a factual sufficiency review under the clear and convincing standard,
we must consider all the evidence the fact finder could reasonably have found to be clear
and convincing, determining whether, on the entire record, the fact finder could reasonably
have formed a firm belief or conviction of the truth of the allegations. See In re J.F.C., 96
S.W.3d at 266; In re C.H., 89 S.W.3d 17, 25, 27-29 (Tex. 2002). In so doing, we consider
whether disputed evidence is such that a reasonable fact finder could have resolved it in
favor of its finding. If, in light of the entire record, disputed evidence that a reasonable fact
finder could not have resolved in favor of the finding is so significant as to prevent a fact
finder reasonably from forming a firm belief or conviction of the truth of the finding, then the
evidence is factually insufficient. See In re J.F.C., 96 S.W.3d at 266; In re S.M.L.D., 150
S.W.3d 754, 757 (Tex.App.–Amarillo 2004, no pet.).
          At trial, the parties sharply disagreed on Jones’s claim of Parker’s incapacity. In her
case in chief, Jones presented evidence of the opinions of Dr. Wieck and Dr. Dash as well
as testimony pointing to a memory loss by Parker, that she could not drive, needed 24-hour
supervision, and required help with food, meals, and medication. 
          In opposition to Jones’s guardianship, Helen Parker


 testified Parker was happy in
Oklahoma, alert, could bathe herself, and was not incapacitated. Kevin Bilbrey, Parker’s
grandson, expressed a belief that Parker could care for herself and had capacity to
execute a medical power of attorney. Rick Cullar, a grandson of Parker, opined that Parker
did not lack total capacity to care for herself and was capable of executing a medical power
of attorney. Vicki Lovett, administrator of Heartland, agreed that Parker possessed the
“cognitive ability” to create a medical power of attorney. Jerry Wallace, a long-time Parker
family friend, assisted Edward Parker in moving his mother from Alterra to Heartland in
December 2006. According to Wallace, Parker could carry on a conversation and play
dominoes. He believed she did not totally lack capacity to care for herself and did not need
a guardian. Another relative, Shirley Parker, believed Parker did not lack total capacity to
care for herself. Ward also opined that her mother was not totally incapacitated. 
          But even those opposing Jones’s appointment and their witnesses recognized
Parker’s limitations. Bilbrey, when questioned by the trial court, testified he would not
“recommend” Parker attempt providing her own food, clothing, or shelter. When asked on
cross-examination if Parker could feed, clothe, and house herself without assistance Lovett
responded, “No.” She also “imagine[d]” Parker would need help managing her financial
affairs. Wallace stated Parker could not live in a rent house without assistance. Shirley
Parker acknowledged Parker needed help with her medications and cooking. Parker
presented excerpts of her January 31, 2007, deposition. This testimony revealed
confusion over the duration of her stay in Vernon. Parker’s attorney ad litem testified he
did not believe Parker could make a rational decision concerning the grounds on which a
guardianship is based. He further testified, “I believe she has a short term memory loss,
and you can get one answer now and a different answer 15 minutes later or a day
later . . . .”
          Viewing all the evidence in the light most favorable to the trial court’s finding of
incapacity, we conclude that a reasonable trier of fact could have formed a firm belief or
conviction that Parker was an incapacitated person. We find the evidence was, therefore,
legally sufficient to support the trial court’s finding of incapacity. Additionally, giving due
consideration to the evidence that the trial court could reasonably have found to be clear
and convincing, we find the evidence was factually sufficient to support the trial court’s
finding of incapacity. Accordingly, we overrule Parker’s third issue.
          In her fourth issue, Parker argues the trial court abused its discretion by appointing
a guardian with full rather than limited authority. For this claim, she directs us to Probate
Code section 602 which she argues requires appointment of a “partial guardian if that less
restrictive alternative will protect the ward.” 
          Section 602 specifies the policy and purpose of guardianship:
A court may appoint a guardian with full authority over an incapacitated
person or may grant a guardian limited authority over an incapacitated
person as indicated by the incapacitated person's actual mental or physical
limitations and only as necessary to promote and protect the well-being of
the person. If the person is not a minor, the court may not use age as the
sole factor in determining whether to appoint a guardian for the person. In
creating a guardianship that gives a guardian limited power or authority over
an incapacitated person, the court shall design the guardianship to
encourage the development or maintenance of maximum self-reliance and
independence in the incapacitated person.

Tex. Prob. Code Ann. § 602 (Vernon 2003). 
          Section 602 does not provide a bright-line standard for the trial court’s determination
whether to vest a guardian with full or limited authority. Rather it expresses the policy of
Chapter XIII of the Probate Code, which, in the words of one commentator, is “to serve the
best interests of the disabled ward, both physically and financially.” Christopher J. Pettit,
Journey Through Protective Services for Texas Elderly, 33 St. Mary's L.J. 57, 64 (2001). 
To serve the ward’s best interest, Chapter XIII creates procedures for courts exercising
jurisdiction in guardianship matters. Id. These procedures “balance the needs of the
disabled ward and the desires of the proposed guardian to protect the ward from himself
or herself as well as from third party influence.” Id. The proper judicial application of
these procedures requires the exercise of the court’s sound discretion. See Eddins v.
Estate of Sievers, 789 S.W.2d 706, 707 (Tex.App.–Austin 1990, no writ) (a court’s
determination of the proper type of guardianship is left to the exercise of its broad
discretion and its decision will not be disturbed absent a clear abuse of discretion). We
have noted above the facts supporting our conclusion that the evidence was legally and
factually sufficient to support the trial court’s finding of incapacity. Those facts also support
our conclusion here that the trial court did not abuse its discretion by appointing a full rather
than limited guardianship of Parker. We overrule Parker’s fourth issue.
          In her fifth issue and allied sub-issues, Parker argues the trial court abused its
discretion by appointing Jones her guardian because (a) Jones sought control of Parker’s
trust making their interests adverse; (b) Parker did not want Jones as her guardian; and
(c) other relatives were willing to serve as Parker’s guardian. 
          Probate Code section 642(b)(1) prohibits a person with an interest adverse to the
proposed ward or incompetent person from filing an application to create a guardianship
of the proposed ward or incapacitated person. Tex. Prob. Code Ann. § 642(b)(1) (Vernon
2003). Parker claims Jones has an interest adverse to hers because she seeks control of
Parker’s trust. As the evidentiary basis for the claim Parker relies on the testimony of
Jones’s son Rick Cullar that he “assume[d]” his mother was concerned about her
inheritance because she told him Edward Parker made loans from the trust to others and
she was unsure if a $100,000 loan was repaid. 
          Based on evidence of this weight, the court did not abuse its discretion by denying
Parker’s motion in limine to disqualify Jones. See Tex. Prob. Code Ann. § 642(c) (Vernon
2003).
          Probate Code section 679 authorizes a person who is not incapacitated to
designate, as well as disqualify, potential guardians. Tex. Prob. Code Ann. § 679(a)(b)
(Vernon 2003). Section 681 forbids appointment of a person disqualified in a section 679
designation. Tex. Prob. Code Ann. § 681(9) (Vernon 2003). On the day of trial, a self-proving declaration creating a hierarchy of potential guardians for Parker was filed. The
declaration expressly disqualified Jones from serving as Parker’s guardian. It is not
disputed that Parker signed the declaration the day before trial began. 
          The trial court determined Parker’s designation was ineffective because she was
incapacitated the day before trial. During the presentation of evidence the court heard
testimony on the issue whether Parker was incapacitated. Parker was not present for trial
so as fact finder the perception of the court of her condition was based exclusively on its
evaluation of the evidence which included brief excerpts of her deposition testimony. 
Witnesses opposed to Jones as guardian testified that Parker wanted her son Edward or
one of the other family members appointed guardian. Jones testified that on December
1, 2006, the day she filed her application, Parker told her she could think of no better
person to serve as her guardian than Jones. The neutral testimony of Parker’s attorney
ad litem sheds light on the reason for this apparent disparity. According to the attorney ad
litem, “you can get one answer now and a different answer 15 minutes later or a day
later . . . .” We find the trial court did not abuse its discretion in disregarding Parker’s
designation.
          Finally, at the eleventh hour Ward and Boring contested their sister’s application and
alternatively sought appointment as guardian of Parker. But as the trial court noted, Jones
came forward first. She took Parker to Texas after their father’s death and spent a
substantial amount of time caring for her at Alterra until their brother Edward Parker
removed their mother without notice to Jones. Ward then felt Jones should be their
mother’s guardian and expressed the opinion in a card written the day after Jones filed her
application. At the time of the January 2007 temporary guardianship hearing, the parties
did not dispute Parker’s need for a temporary guardian. But only Jones requested
appointment by the trial court. We find the trial court did not abuse its discretion by
appointing Jones her mother’s guardian and denying the applications of Ward and Boring.
We overrule Parker’s fifth issue and allied sub-issues.
          In her sixth issue, Parker contends it was error to appoint a guardian of her estate
because she possessed no property in Texas. Parker presents this argument in two
sentences, without citation to authority or the record. An appellant’s issue that is not
supported with authorities, contains no record citations, and makes only conclusory
arguments presents nothing for appellate review. See Tex. R. App. P. 38.1(h); Tacon
Mech. Contractors, Inc. v. Grant Sheet Metal, Inc., 889 S.W.2d 666, 671
(Tex.App.–Houston [14th Dist.] 1994, writ denied). Accordingly, we overrule Parker’s final
issue.
          Having overruled each of Parker’s issues and sub-issues, we affirm the judgment
of the trial court.
 
James T. Campbell

Justice