225 S.W.3d 221 (2006)
In the Interest of V.L.C., A Child.
No. 08-05-00096-CV.
Court of Appeals of Texas, El Paso.
January 19, 2006.
*222 Doris Sipes, El Paso, for appellant.
John P. Mobbs, El Paso, for appellee.
Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

OPINION
DAVID WELLINGTON CHEW, Justice.
This appeal arises from the trial court's child support order issued in conjunction with modification of the parties' possession and access to their child, V.L.C. In her sole issue, V.L.C.'s mother, Laura De la Rosa contends the trial court lacked jurisdiction to modify her out-of-state child support order because she only requested enforcement, not modification. For the reasons stated below, we affirm.

BACKGROUND
On September 19, 2000, William Chapman and Laura De la Rosa were granted a divorce in Sinaloa, Mexico by mutual agreement. The couple had married in El Paso, Texas in 1991 and had one child, V.L.C., who was born in 1998. The Sinaloa divorce agreement provided that the parties would have joint legal custody of V.L.C., with Ms. De la Rosa having physical custody over the child. With respect to child support, the agreement stated the following:
The undersigned William Guy Chapman, is committed to pay child support for his minor daughter [V.L.C.] in the amount of US$600.00 six hundred U.S. dollars *223 per month, or its equivalent in Mexican currency, under the following conditions:
(a) Said amount shall increase annually in proportion to the United States of America inflation (CPI Index).
(b) Such amount shall be paid on the 15th fifteenth day of each month, and shall get deposited in a bank account provided by the second party, despite of a different way of payment that may be implemented for such purpose, as long as it is agreed by the parties involved in this agreement.
(c) Mr. William Guy Chapman shall pay all medical expenses of the above mentioned minor until she gets married.
(d) Mr. Chapman is also committed to purchase a life insurance policy in the amount of US$250,000.00 two hundred and fifty thousand U.S. dollars, appointing his daughter [V.L.C.] as beneficiary, with the understanding this money shall be payable to her when she reaches 18 eighteen years of age.
(e) Mr. William Guy Chapman will also be responsible for paying all expenses for his above mentioned daughter's education and extra-curriculum activities, as long as both parents agree on the more convenient ones for said minor due to her little age.
On September 30, 2003, Mr. Chapman filed an original petition in suit affecting the parent-child relationship ("SAPCR"), seeking modification of the portion of the Sinaloa divorce decree concerning possession and access to V.L.C. Specifically, Mr. Chapman requested that possession of and access to V.L.C. be modified to provide for an enforceable visitation schedule based on the Standard Possession Order under the Texas Family Code. Mr. Chapman asserted that the trial court had jurisdiction to make a child-custody determination in this case under Sections 152.201 and 152.203 of the Texas Family Code. Mr. Chapman attached an untranslated copy of the Sinaloa divorce decree to his petition. He also attached a proposed Standard Possession Order.
In response, Ms. De la Rosa filed an original answer, generally denying Mr. Chapman's petition. Ms. De la Rosa also filed a counter-petition to the child custody modification suit. In her counter-petition, she requested modification of the portion of the divorce decree concerning possession and access to V.L.C., and appointment of both parents as joint managing conservators of the child. With regard to support, the petition stated:
WILLIAM GUY CHAPMAN, Counter-Respondent, is obligated to support the child and should be ordered by the Court to make payments for the support of the child and to provide medical child support in the manner specified by the Court.
Ms. De la Rosa also requested temporary orders, including orders for Mr. Chapman to pay child support, to pay health insurance premiums for V.L.C., and to pay V.L.C.'s uninsured medical expenses while the case was pending. Ms. De la Rosa asserted that the trial court had jurisdiction over the case pursuant to Sections 152.201 and 152.203 of the Texas Family Code. Like Mr. Chapman, Ms. De la Rosa also attached an untranslated copy of the Sinaloa divorce decree to her counter-petition. On October 23, 2003, Mr. Chapman amended his petition to include a request for a temporary order for unrestricted standard possession under the Texas Family Code.
On December 10, 2003, the trial court entered temporary orders in the suit, appointing each parent as temporary joint *224 managing conservators and establishing a temporary possession order. With regard to child support and health care, the trial court ordered that "child support and health insurance continue as provided in the parties' final decree of divorce."
On January 6, 2004, Ms. De la Rosa filed a petition to register the Sinaloa divorce decree and to enforce the child support provisions in the foreign decree pursuant to Chapter 159 of the Texas Family Code. Specifically with regard to jurisdiction, Ms. De la Rosa alleged that Mexico has enacted a law or established procedures for issuance and enforcement of support orders that are substantially similar to the procedures under Chapter 159 of the Texas Family Code. In her petition, Ms. De la Rosa sought enforcement of the provisions concerning payment of V.L.C.'s medical expenses and education and extra-curriculum activities. Ms. De la Rosa alleged that Mr. Chapman had violated these provisions and owed the sum of $2,497 in past due tuition and the sum of $1,341.14 for extra-curricular activities. In the petition, Ms. De la Rosa also requested that Mr. Chapman be held in contempt. Ms. De la Rosa attached a certified translated copy of the Sinaloa divorce decree to her petition.
Mr. Chapman filed an answer to the petition for enforcement on February 18, 2004. In his answer, Mr. Chapman denied the allegations in the petition and argued instead that the "portion of the agreement of the parties [was] not child support and [was] not couched in terms of child support." With regard to the medical expenses and education and extra-curricular activities, Mr. Chapman argued that payment of these expenses required both parties' agreement and there had been no agreement on those matters.
The trial court conducted a bench trial in the case on November 15 and 16, 2004. In his opening statement, Mr. Chapman's counsel argued that when Mr. Chapman filed his action, he had invoked the court's jurisdiction over every aspect of the child, including child support. Further, his counsel noted that Ms. De la Rosa in her counter-petition had requested that the trial court order Mr. Chapman "to make payments for the support of the child and to provide medical, child support in the manner specified by the Court." Mr. Chapman's counsel argued that by her responsive pleading, Ms. De la Rosa was asking the trial court to make support decisions in this particular case. In contrast, Ms. De la Rosa's counsel argued that Ms. De la Rosa was not seeking to set aside the agreements that were incorporated into the divorce decree; rather, she was asking the trial court to enforce the existing order, which had been translated and filed with the court, and to require Mr. Chapman to pay those monies which were overdue.
Much of the testimony at the hearing concerned the possession issues, which are not at issue in this appeal. With regard to the child support dispute, Mr. Chapman testified that under the Mexican divorce decree, he agreed to pay six hundred U.S. dollars in child support, which he had consistently paid. Mr. Chapman agreed that he was required to pay medical expenses for V.L.C. until she marries under the agreement. However, Mr. Chapman disputed the life insurance policy provision, stating that it was his understanding that the $250,000 policy was payable upon his death. According to Mr. Chapman, there was no agreement that he was to give V.L.C. the proceeds of the policy when she reached eighteen years of age. With respect to the education and extra-curricular activities expenses, Mr. Chapman testified that he had agreed to pay one-half, not all, of the tuition costs for V.L.C.'s private *225 school. Mr. Chapman admitted that he owed some money for V.L.C.'s gymnastics classes since October 2003, but he disputed the amounts submitted by Ms. De la Rosa.
Mr. Chapman testified that he earns approximately $103,000 in gross income. Mr. Chapman wanted to pay $1,200 a month in child support, an increase of $600 to cover V.L.C.'s education and extra-curricular activities costs in lieu of any prior agreement. He was also willing to pay 75 percent of the uninsured medical expenses and would continue to pay for V.L.C.'s medical insurance.
Ms. De la Rosa testified that Mr. Chapman's financial obligations were incorporated into the Mexican divorce decree and that she was asking the court to enforce the parties' agreement and not to change it. According to Ms. De la Rosa, Mr. Chapman owed approximately $6,500 for V.L.C.'s private school tuition, which included a past due amount from the last school year and the present school year, over $4,000 in extracurricular activities, and $548 in medical expenses, for a total amount of $10,552.
Erik Salvador Luna, an attorney licensed to practice law in Mexico, testified that he participated in Mr. Chapman's and Ms. De la Rosa's divorce agreement. Mr. Luna stated that the decree was presented along with the agreement and was filed in Mexican court. Mr. Luna explained that after the judge reviews the documents, he presents an executed sentence, which is valid and enforceable in Mexico and the U.S. He did not testify as to whether the decree was enforceable as a judgment or as a contract.
On December 15, 2004, the trial court entered an order in the suit affecting the parent-child relationship and on the petition for enforcement. The court appointed the parties as joint managing conservators of V.L.C. and entered a modified Standard Possession Order. With regard to child support, the trial court set Mr. Chapman's child support obligation as $1,200 per month, retroactive to January 1, 2004 so that an arrearage of $6,600 was accrued. The trial court ordered Mr. Chapman to pay Ms. De la Rosa as retroactive child support six payments of $1,100 per month with the first payment due on December 1, 2004. In its order, the trial court found that the retroactive support arrearage was sufficient to reimburse Ms. De la Rosa for the tuition costs, the alleged un-reimbursed extracurricular activities, and unpaid medical expenses. The court also found that the child support obligation would be sufficient to pay for education and extra-curricular activities costs and ordered that Mr. Chapman is no longer responsible for paying such costs. Further, under the order, Mr. Chapman was required to pay Ms. De la Rosa $91 per month for the cost of maintaining V.L.C.'s health insurance coverage and was required to pay 75 percent of any uninsured medical expenses. Lastly, the trial court ordered Mr. Chapman to obtain a life insurance policy payable upon his death in the initial amount of $150,000 to secure payment of the remaining child support due under the order.
On January 13, 2005, Ms. De la Rosa filed a motion for new trial arguing that the trial court erred in concluding that the Mexican agreement provisions on the annuity and educational costs could be changed. Ms. De la Rosa now brings this appeal.

DISCUSSION

MODIFICATION OF AN OUT-OF-STATE CHILD SUPPORT ORDER
In her sole issue, Ms. De la Rosa contends that the trial court lacked subject-matter *226 jurisdiction under Chapter 159 of the Texas Family Code to modify the child support obligations contained in the Mexican divorce decree.

Subject-matter Jurisdiction
In her sole issue, Ms. De la Rosa contends that the trial court lacked jurisdiction to modify the child support agreement in the Sinaloa divorce decree pursuant to Chapter 159, the Uniform Interstate Family Support Act ("UIFSA") of the Texas Family Code because neither party requested modification and she did not consent to the modification. See TEX.FAM. CODE ANN. §§ 159.001-901 (Vernon 2002 & Supp.2005).[1]
Subject-matter jurisdiction is essential for a court to have authority to decide a case; it is never presumed and cannot be waived. Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 443 (Tex.1993); McGuire v. McGuire, 18 S.W.3d 801, 804 (Tex.App.-El Paso 2000, no pet.). Because subject-matter jurisdiction is a question of law, our review is de novo. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex.1998); City of Midland v. Sullivan, 33 S.W.3d 1, 6 (Tex. App.-El Paso 2000, pet. dism'd w.o.j.).
The record shows that Ms. De la Rosa and V.L.C. reside in Texas. Initially, Mr. Chapman filed SAPCR action seeking modification of the child possession and access portion of the Sinaloa divorce decree. Mr. Chapman is a resident of Mexico. Mr. Chapman concedes that the trial court had personal jurisdiction over all the parties because he submitted to the jurisdiction of Texas. Neither party disputes that the trial court had jurisdiction to decide the custody and visitation issues in this case under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). See TEX.FAM.CODE ANN. §§ 152.201-203. Ms. De la Rosa contends, however, that the trial court lacked jurisdiction to modify the child support provisions under the UIFSA, as codified in Chapter 159 of the Texas Family Code.
A proceeding filed under Chapter 159 (UIFSA) to establish, enforce, or modify child support is not a Suit Affecting the Parent-Child Relationship (SAPCR). See TEX.FAM.CODE ANN. § 101.032(b)(Vernon 2002). Although the same parties may be involved, there are separate and independent jurisdictional requirements that must be met under the UCCJEA and the UIFSA in order to modify an out-of-state order. See TEX.FAM.CODE ANN. §§ 152.201-210, 159.601-615; see also In re Brilliant, 86 S.W.3d 680, 685 (Tex.App.-El Paso 2002, no pet.) (discussing the jurisdictional bases for determining whether a state has jurisdiction to make an initial child custody determination). A court in which a suit is filed may exercise its jurisdiction over those portions of the suit for which it has authority. TEX.FAM.CODE ANN. § 102.012(a). A court's authority to resolve all issues in controversy between the parties may be restricted because the court lacks the required jurisdiction under Chapter 159. See TEX.FAM.CODE ANN. § 102.012(b)(3).

No Out-of-State Child Support Order
In her enforcement petition, Ms. De la Rosa argued that Mr. Chapman had violated the medical expenses and education and extra-curriculum activities provisions in the Sinaloa agreement. In his response, Mr. Chapman alleged that the parties' agreement was not "child support and [was] not couched in terms of child support," *227 and that under the agreement, he "was not ORDERED to do anything." Likewise, we have reached the same conclusion in our review of the parties' purported agreement in the Sinaloa divorce decree.
The Sinaloa agreement states that Mr. Chapman is "committed" to paying child support in the amount of six hundred U.S. dollars per month, under certain "conditions." These conditions include that Mr. Chapman "shall pay" all medical expenses for V.L.C. until she gets married; that he is "committed" to purchase a life insurance policy in the amount of $250,000, naming V.L.C. as the beneficiary and payable to her at age eighteen; and that Mr. Chapman "will also be responsible" for paying all expenses for his daughter's education and extra-curriculum activities, "as long as both parents agree on the more convenient ones for said minor, due to her little age." The parties' agreement was part of their petition for divorce under mutual agreement and was accepted and approved by the Sinaloa court in the final divorce decree. While there may be a contractual obligation, Mr. Chapman was not ordered to provide child support. See TEX.FAM. CODE ANN. § 159.102(2), (3), & (23)("`Child support order' means a support order for a child," "`Duty of support' means an obligation imposed or imposable by law to provide support for a child . . . including an unsatisfied obligation to provide support," and "`Support order' means a judgment, decree, or order . . . for the benefit of a child, a spouse, or a former spouse that provides for monetary support, health care, arrearages, or reimbursement. . . ."). Payment of the designated expenses was contingent on the parties' future agreement on those matters. There simply is no out-of-state child support order in this case, thus the UIFSA did not govern the trial court's jurisdiction in the suit.

Sinaloa Is Not a "State"
Further, even if we were to find that a foreign child support order existed, we would still conclude that this case is not governed by the UIFSA. On appeal, Mr. Chapman contends that the UIFSA does not apply to this case because Sinaloa, Mexico is not a "state" as defined by the Act. We agree with this contention.
Central to the issue of the trial court's subject-matter jurisdiction under the UIFSA, however, is the question of whether a foreign country or political subdivision is a "state." In its defined terms, "state" includes a foreign country or political subdivision that: (1) has been declared to be a foreign reciprocating country or political subdivision under federal law; (2) has established a reciprocal arrangement for child support with this state as provided by Section 159.308; or (3) has enacted a law or established procedures for issuance and enforcement of support orders that are substantially similar to the procedures under Chapter 159. See TEX.FAM.CODE ANN. § 159.102(21)(B)(i)-(iii). No reciprocating agreement exists between the United States and Mexico for the enforcement of child support obligations.[2]See Notice of Declaration of Foreign Countries as Reciprocating Countries for the Enforcement of Family Support (Maintenance) Obligations, 69 Fed.Reg. 59,980 (Oct. 6, *228 2004)(listing the following countries that have been designated foreign reciprocating countries for child support enforcement: Australia, Czech Republic, Ireland, Netherlands, Norway, Poland, Portugal, Slovak Republic, Switzerland, and nine Canadian provinces and territories).
The statute also provides that Texas may enter into a reciprocal arrangement to recognize a foreign country or political subdivision in the absence of a federal reciprocal declaration. See TEX.FAM.CODE ANN. § 159.308. There was no evidence presented to establish that Texas has a reciprocal arrangement with any state in Mexico.[3] In her pleading, Ms. De la Rosa alleged that the "United States of Mexico has enacted a law or established procedures for issuance and enforcement of support orders that are substantially similar to the procedures under chapter 159 of the Texas Family Code." Erik Luna testified that the parties' divorce agreement was valid and enforceable in Mexico and the United States, but did not testify that Mexico has enacted procedures similar to the UIFSA. Thus, we agree with Mr. Chapman that there was no evidence presented to establish that Sinaloa, Mexico is a "state" for UIFSA purposes. For this reason, we conclude that even if an enforceable foreign support order had existed to modify, that, nevertheless, UIFSA was not the governing law in this case.

Trial Court's Jurisdiction under SAPCR Suit
The trial court determined that it had jurisdiction over the entire case, including the custodial and support issues. Mr. Chapman contends that Ms. De la Rosa's request for a support award in her counter-petition to the SAPCR action granted the trial court authority because the issue of child support was raised by the pleadings.
With regard to child support, the pleading stated the following:
WILLIAM GUY CHAPMAN, Counter-Respondent, is obligated to support the child and should be ordered by the Court to make payments for the support of the child and to provide medical child support in the manner specified by the Court.
We conclude that in her counter-petition, Ms. De la Rosa raised the child support issue because she requested a final child support order in the suit as well as rendition of temporary orders for the same while the case was pending. Chapter 159 "does not provide the exclusive method of establishing or enforcing a support order under the law of this state." TEX.FAM.CODE ANN. § 159.104(b)(1). Because there was no out-of-state child support order that could be recognized by the trial court under the UIFSA, we must determine whether the trial court had jurisdiction to enter a child support order as part of the SAPCR action.
Here, it is undisputed that Mr. Chapman submitted to the jurisdiction of Texas. Therefore, the trial court obtained personal jurisdiction over the nonresident party *229 in this case. See TEX.FAM.CODE ANN. § 102.011(b)(2). Personal jurisdiction over the parties allowed the court to determine child support. See TEX.FAM.CODE ANN. § 154.001(a)("The court may order either or both parents to support a child in the manner specified by the order. . . ."). We find this case similar to Flores v. Melo-Palacios, 921 S.W.2d 399 (Tex.App.-Corpus Christi 1996, writ denied), in which the appellate court found that the trial court in that case had jurisdiction to establish an initial child support order in a SAPCR suit. Flores, 921 S.W.2d at 403-04. In Flores, the mother, a Mexican national and Texas resident, sought to modify and enforce a Mexican child support order or to establish a Texas order for child support in a SAPCR suit. See Flores, 921 S.W.2d at 401. There was no court order confirming the registration of the foreign decree in the record. Id. The trial court had ruled that it lacked jurisdiction over the father, a Mexican national, and dismissed the lawsuit for lack of subject-matter jurisdiction. Id. at 401. The Flores Court found that the trial court had personal jurisdiction over the father because he was a Texas resident when he received service of process. Id. The Court also determined that even if he was not a Texas resident at the time he was served, he still fell within the trial court's in personam jurisdiction under the long-arm statute governing SAPCR suits. Id. at 402; see also TEX. FAM.CODE ANN. § 102.011. In addressing the trial court's dismissal ruling for lack of subject-matter jurisdiction, the Flores Court treated the parties' suit as a SAPCR suit for establishment of an initial child support order without considering the mother's alternative request for registration, enforcement, and modification of the existing Mexican child support order, most likely because there was no order confirming registration. Flores, 921 S.W.2d at 403-04. Because we conclude that the UIFSA jurisdictional requirements contained in Chapter 159 do not apply in this case, we reach the same result as in Flores when we apply the jurisdictional rules that govern SAPCR suits for an initial child support determination in Texas.
Accordingly, we conclude that the UIFSA does not apply in this case, but irregardless, the trial court had jurisdiction to enter an initial child support determination in Texas and, in fact, did so in its final order on the SAPCR action. Ms. De la Rosa's sole issue is overruled.
For the reasons stated above, we affirm the trial court's order.
NOTES
[1] Unless otherwise stated, all further section references in this opinion refer to the Texas Family Code Annotated (Vernon 2002 & Supp.2005).
[2] Jurisdictions have also recognized foreign child support orders under the equitable doctrine of comity. See e.g., Kalia v. Kalia, 151 Ohio App.3d 145, 783 N.E.2d 623, 629-31 (2002)(enforcing an Indian child support order on the basis of comity); In re Marriage of Kohl, 334 Ill.App.3d 867, 268 Ill.Dec. 547, 778 N.E.2d 1169, 1181 (2002)(discussing the doctrine of comity in Illinois courts); see also TEX.FAM.CODE ANN. § 159.104(a)("Remedies provided in this chapter are cumulative and do not affect, the availability of remedies under other law, including the recognition of a support order of a foreign country or political subdivision on the basis of comity.").
[3] Mr. Chapman does, however, direct the Court's attention to a translated declaration by the Mexican Minister of Foreign Affairs, which states that the family laws for the enforcement of support obligations in 26 of Mexico's 31 states, as well as its federal district, are reciprocal with those states of the United States that enacted the predecessor statutes to UIFSA. The state of Sinaloa is one of the few Mexican states excluded from the declaration. This document is available on the website for the National Child Support Enforcement Association at: http://www. ncsea. org/international/ mexico/laws/Decl  ReciprEng.pdf; but see also http://www. ncsea. org/international/ mexico/laws/Decl  ReciprEsp.pdf.